FILED

2005 Mar-25  PM 04:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DERRICK THOMAS, TIM AVERY** | ] | |
| **KEDRIC HOOKS, ROBERT SMITH,** | ] | |
| **and ROBERT VASSER,** | ] | |
| | ] | |
| **PLAINTIFFS,** | ] | |
| | ] | |
| **v.** | ] | **Case No.  CV-02-VEH-0565-S** |
| | ] | |
| **HEALTHSOUTH CORPORATION** | ] | |
| | ] | |
| **DEFENDANT.** | ] | |

## <u>MEMORANDUM OF DECISION</u>

This Court has before it the August 4, 2003 motion of Defendant HealthSouth Corporation

for summary judgment as to Plaintiff Robert Vasser's claims.  (Doc. 21)

### I.  Procedural History

Plaintiffs Robert Vasser, Derrick Thomas, Tim Avery, Robert Smith and Kedric Hooks

commenced this action on March 4, 2002, by filing a complaint in this Court alleging separate

and individual  violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e et seq., the Civil Rights Act of 1991, and 42 U.S.C. § 1981.[1]   On August 1, 2002,

Plaintiffs filed a Motion to Amend Complaint which was granted on August 5, 2002.  Plaintiff

Vasser contends that throughout his employment, Defendant subjected him to both a racially

hostile work environment and disparate pay race discrimination by paying him less than similarly

situated white employees.  Plaintiff also alleges that he was denied promotions and such positions

were usually given to less senior and less qualified white employees constituting disparate

---

[1] The claims of Plaintiff Kedric Hooks (deceased) were dismissed by this Court on April
17, 2003.  The claims of the three other remaining Plaintiffs (Thomas, Avery, and Smith) are the
subject of separate pending summary judgment motions filed contemporaneously with the
summary judgment motion regarding Plaintiff Vasser.

treatment race discrimination in promotions.  In addition, Plaintiff  contends that he attempted to use the Defendant's internal complaint procedures to express his concerns regarding discrimination and retaliation; however, no corrective action was taken by the Defendant and he was further subjected to retaliation.  The Plaintiff asserts that the Defendant has a pattern and practice of race discrimination.

On August 4, 2003, the Defendant filed a motion for summary judgment asserting: (1) that Plaintiff has failed to make a prima facie case of disparate pay race discrimination, race discrimination in promotions, and retaliation;  (2) that even if Plaintiff has established a prima facie case as to  his discrimination and retaliation claims, Plaintiff has failed to rebut the Defendant's legitimate, non-discriminatory, and non-retaliatory reasons for its employment decisions; (3) that Plaintiff has failed to establish the essential elements of a racially hostile work environment claim by providing substantial evidence that he was subjected to severe or pervasive racial harassment that altered the terms or conditions of his employment; and (4) that Plaintiff has failed to establish by substantial evidence  a pattern or practice of race discrimination claim.

The Defendant has submitted evidence[2]  in support of its own motion for summary judgment and filed a supporting brief on August 4, 2003.  On September 5, 2003, the Plaintiff filed a brief in response to the Defendant's motion for summary judgment.  The Plaintiff did not file evidence in opposition to Defendant's motion for summary judgment.  The Defendant filed a reply brief on September 26, 2003.

---

[2] The Defendant submitted the depositions of Plaintiff Robert Vasser, Plaintiff Timothy Avery, Plaintiff Robert Smith, Plaintiff Derrick Thomas, Tricia Ealy, Mike McKee, a declaration by Tricia Ealy, and a declaration by Mike McKee.  References to the deposition transcripts are denoted by the last name of the deponent, followed by the abbreviation "Dep.," followed by the page number or the deposition exhibit being referenced.

## II.  Standard of Review

### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See

Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III.  Relevant Facts[3]

Robert Vasser, the Plaintiff, was hired by HealthSouth in May, 1999, as a mail room and inventory clerk at a salary of $7.00 per hour.  (Vasser Dep.,  at 52-54.)  After graduating from high school and prior to working at HealthSouth, Vasser's only work experience was approximately eight months of employment at McDonald's. (Vasser Dep., at 51-52.) Vasser had no prior experience working in a mail room, print shop, or distribution center.  During his entire period of employment at HealthSouth, Vasser worked as a  mail room and inventory clerk  in the mail room, sorting and delivering incoming mail and handling outgoing mail.  (Vasser Dep., at 59-61.)  Although Vasser held the position title of mail room and inventory clerk, Vasser  never worked in the distribution center.

At HealthSouth, the position title of mail room and inventory clerk has always included several very different positions.  (Defendant's Brief at 2.)  For example, mail room clerks and distribution center clerks are both classified as mail room and inventory clerks, although the jobs are entirely different.  (Id.; McKee Declaration at ¶ 3)  The mail room employees sort and distribute mail that is being sent and/or received internally and externally.  (Vasser Dep., at 75.)  The distribution center is a warehouse shipping and receiving operation which receives, stores and ships bulk printed and marketing materials including brochures, printed personnel and medical forms, water bottles, t-shirts, and annual reports to outlying HealthSouth facilities around

---

[3] Facts are undisputed unless otherwise expressly noted.

the country.  (Vasser Dep., at 72-75.)

While an employee at HealthSouth, Vasser received good annual performance evaluations and his raises were in the upper range of the merit increases.  (Vasser Dep. at 56.)  In October 1999, Vasser received a merit-based raise of twenty-five cents, increasing his salary to $7.25 per hour.  (Ealy Dep. Ex. 3.)  In October, 2000, Vasser again received a merit based raise to $7.53 per hour.  (Ealy Dep. Ex. 3.)

In or around October, 2001, Vasser complained to Tricia Ealy, Director of Human Services, that he was being underpaid in his position and being paid less than persons he trained.  (Vasser Dep.,  at 128-29; Ealy Dep.,  at 43.)  Ealy told Vasser that she would look into his complaint.  (Vasser Dep., at 134.)  Ealy did investigate Vasser's complaint and contacted Vasser regarding the outcome of her investigation. (Ealy Dep.,  at 43-44.)  Ealy informed Vasser that his pay rate seemed fair and appropriate within the HealthSouth pay scale system for his job and his level of experience. (Vasser Dep.,  at 43-44.)  Vasser had no further discussions with Ealy and made no further complaints to anyone.  (Vasser Dep.,  at 135.)  Vasser alleges that he was paid less than five white employees: Jim McCravey, David Wise, Sid Crocker, Matt Spraggins, and Melissa Tudor.  (Vasser Dep., at 103.)

Vasser was terminated by HealthSouth on or around October 10, 2001, after engaging in a physical altercation (i.e., fight) with his supervisor.  The supervisor was also terminated.  (Vasser Dep.,  at 32-33.)

HealthSouth has an equal employment opportunity policy that was in place throughout Vasser's employment at HealthSouth.  (Vasser Dep., at 92; Defendant's Brief at 4.)  HealthSouth also has a policy prohibiting workplace harassment, as well as a reporting and conflict resolution

policy, that were also in effect throughout Vassser's employment at HealthSouth.  (Vasser Dep., at 92-93; Defendant's Brief at 4.)  Vasser received copies of these policies, that were contained in the employee handbook, when he was hired by HealthSouth.  (Vasser Dep.,  at 93.)

### IV. Applicable Substantive Law and Analysis

Plaintiff claims  race-based disparate treatment in compensation and promotions, and retaliation under Title VII, 42 U.S.C. 2000e and 42 U.S.C. § 1981.  Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a) (1994).[4]  The Court is aware that the summary judgment rule applies in job discrimination cases just as in other cases.  See Chapman, 229 F.3d at 1025 (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims.  See Standard, 161 F.3d at 1330 (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  See id.; see also Schoenfeld v. Babbitt, 168

---

[4]The same framework used to analyze claims under Title VII is also employed in assessing claims of employment discrimination under § 1981.  See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence).  A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987).  Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption."  Burns v. Gadsden State Community College, 908 F.2d 1512 (11th Cir. 1990).  Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition).

"In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)."  Combs, 106 F.3d at 1527.  Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally.  See id. at 1527-28.  The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation.   See, e.g., Nix v. WLCY Radio/Rahall

<u>Communications</u>, 738 F.2d 1181, 1185 (11th Cir. 1984); <u>Lincoln v. Board of Regents of Univ. Sys.</u>, 697 F.2d 928, 937 (11th Cir. 1983).  In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[5]  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802 (hiring); <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); <u>see also</u> <u>Nix</u>, 738 F.2d at 1185 (discipline); <u>Pittman v. Hattiesburg Mun. Separate Sch. Dist.</u>, 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[6]  <u>See</u> <u>Combs</u>, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons."  <u>Burdine</u>, 450 U.S. at 254-55; <u>see</u> <u>Chapman</u>, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination drops out of the case and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[7]  Where the defendant

_____

[5]<u>See also</u> <u>McDonnell Douglas</u>, 411 U.S. at 802 n.13 (observing that "[t]he facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations").

[6]<u>See</u> <u>Chapman</u>, 229 F.3d at 1034 (stating that "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion").

[7]If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that

articulates multiple reasonable, legitimate, and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons. See Chapman, 229 F.3d at 1024-25. Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case. See Combs, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at. 253. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgment motion either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-49, 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in

---

reason is not sufficient. Chapman, 229 F.3d at 1030.

evaluating a Rule 50 motion);[8] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

## A.  Discrimination in Compensation

Defendant argues that it is entitled to summary judgment as to Plaintiff's disparate pay race discrimination claim because Plaintiff has failed to establish a prima facie case of disparate pay and has failed to rebut the Defendant's legitimate nondiscriminatory reasons for the salaries of the alleged comparators.  Plaintiff claims that throughout his employment, Defendant, his former employer, paid him less than similarly situated white employees constituting disparate pay race discrimination.   The Court finds that Plaintiff has not established a prima facie case of race-based discrimination in compensation.

Adapting the McDonnell Douglas test to the facts of this case, an employee must establish a prima facie case of intentional discrimination in compensation under Title VII by showing that (1) he belongs to a racial minority; (2) he received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) he was qualified to receive the higher wage. See Cooper, et. al., v. Southern Company, et. al., 390 F.3d 695, 735 (11th Cir. 2004) (compensation discrimination by race); Daniel v. Church's Chicken, 942 F.Supp. 533, 538 (S.D. Ala 1996); Miranda v. B&B Cash Grocery

---

[8]The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law.  See Chapman, 229 F.3d at 1025, n.11.

Store, Inc, 975 F.2d 1518, 1528 (11th Cir. 1992) (compensation discrimination by gender); MacPherson v. Univ. of Montevallo, 922 F.2d 766, 774 (11th Cir. 1991) (compensation discrimination by age).  The comparators must perform jobs similar to the Plaintiff's; thus, the Plaintiff must show that in his job, he "shared the same type of tasks" as the comparators. Cooper, et. al., v. Southern Company, et. al., 390 F.3d 695, 735 (11th Cir. 2004), quoting Miranda, 975 F.2d at 1529.

Plaintiff is a black male.  The Defendant argues that Plaintiff cannot  establish a prima facie case because he fails to show the existence of a similarly situated employee. Plaintiff alleges that he was paid less than five white employees who were similarly situated to him: Jim McCravey, David Wise, Sid Crocker, Matt Spraggins, and Melissa Tudor.  It is undisputed that he received lower wages than four of the five white employees that he alleges are similarly situated comparators.[9]  The Eleventh Circuit has noted in dicta that "in a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him."  Cooper, 390 F.3d at 735 (quoting MacPherson, 922 F.2d at 774 n.16).   In order to determine whether the alleged comparators are similarly situated to the Plaintiff, the tasks and duties of each of the named comparators will be addressed individually.   In addition, the remaining prongs of the prima facie test and burden shifting framework will be analyzed below.

**1.      Melissa Tudor**

---

[9] Plaintiff alleges that the fifth employee, Matt Spraggins was paid a higher salary than him.  However, the record establishes that Matt Spraggins made the same or lower wages than Plaintiff while he was employed at HealthSouth.  (McKee Declaration ¶ 15.)

Melissa Tudor's position is classified as a mail room and inventory clerk position. However, she holds the receptionist/coordinator position. The Defendant has submitted evidence that Tudor's job is entirely different than that of the clerks working in the mail room. As the receptionist/coordinator, Tudor: (1) operates as the receptionist for the mail room, the distribution center, and the print shop; (2) coordinates the operation of the mail room; (3) dispatches and directs couriers; and (4) handles other support functions for the mail room and other departments. (McKee Decl. at ¶ 4.) In contrast, the Plaintiff's duties as a mail room and inventory clerk in the mail room consist primarily of sorting and delivering incoming mail and handling outgoing mail. The Defendant asserts that Tudor is paid a higher salary than any clerk working in the mail room because of her responsibilities as the receptionist and coordinator. The Plaintiff has not provided any evidence to dispute the Defendant's evidence that Tudor is not a proper comparator. Although Tudor and Plaintiff are classified as mail room and inventory clerks, the evidence establishes that Tudor and Plaintiff do not share the same type of duties and tasks. The Court finds that Tudor is not similarly situated to the Plaintiff and is not a proper comparator. The Plaintiff has not established a prima facie case of discrimination in compensation as it relates to Melissa Tudor.

**2.     Chris Wise**

The Defendant has provided evidence that Chris Wise worked at HealthSouth as a courier. Although he, like other couriers, occasionally helped in the mail room when his courier work was slow, the Defendant has shown that Wise was never assigned to the mail room. Therefore, his primary job was that of a courier. The Defendant asserts that Wise's

13

duties as a courier were entirely different from the tasks of Plaintiff, a mail room clerk. As noted above, Plaintiff's duties as a mail room and inventory clerk in the mail room consist primarily of sorting and delivering incoming mail and handling outgoing mail. The Plaintiff acknowledges in deposition testimony that the couriers were the "guys that were out in automobiles delivering, working as couriers delivering stuff throughout the course of the day." (Vasser Dep., at 99.)   Further the Defendant asserts that the courier position is typically a higher paying position than a mail room clerk because of the responsibility and reliability requirements of the courier position. In addition, the Plaintiff has not provided any evidence to dispute the Defendant's evidence that Wise is not a proper comparator. Based on the foregoing analysis, the Court finds that Wise is not a proper comparator and similarly situated to the Plaintiff. The Plaintiff has not established a prima facie case of discrimination in compensation as it relates to Chris Wise.

**3.**    **Jim McCravey**

Jim McCravey's position was classified as a mail room and inventory clerk position. Although McCravey was classified as a mail room and inventory clerk, the Defendant asserts that McCravey was not a mail room clerk or ever assigned to the mail room. The Defendant alleges that McCravey is not similarly situated to the Plaintiff for pay comparison because McCravey was hired into the distribution center to handle the shipping of printed materials, an entirely different job than that of Plaintiff. The Defendant has provided evidence that the basic function of the distribution center is to provide primarily the outlying HealthSouth facilities with the operating supplies they need, such as preprinted marketing materials, promotion materials, and human resources materials, including applications and insurance

14

forms.  The Plaintiff alleges that the distribution center clerk position is an overall shipping and receiving position which requires the performance of the same duties as a mail room clerk.

Although both positions entail the receipt and delivery of mail, the two positions are distinct.  By showing a significant difference in job responsibilities, a defendant in an action alleging racial discrimination in employment can negate one of the crucial elements in the plaintiff's prima facie case:  different pay for the same or substantially the same responsibility.  Pittman, 644 F.2d at 1074.  The distribution clerk position is a warehouse shipping and receiving operation which receives, stores and ships bulk printed and marketing material to other HealthSouth facilities.  In contrast, the mailroom clerk position entails the sorting and delivery of postal and UPS incoming and outgoing mail.  Even though the mail room clerk position may handle inner-office mail, the distribution center clerk position primarily receives and ships bulk mail to other HealthSouth facilities.

Even assuming, however that the Court finds that McCravey, a distribution center clerk, and Plaintiff, a mail room clerk are similarly situated, Plaintiff has not offered any counter evidence to rebut the Defendant's legitimate non-discriminatory reasons for the disparate pay.  The Defendant has proffered that McCravey's significant prior work experience also warranted paying him a higher salary than Plaintiff.[10]  A factor such as experience is a legitimate non-discriminatory reason and is often used as a defense to liability in sex-based wage discrimination claims.  See Miranda, 975 F.2d at 1533 n. 18.

_____

[10] The record establishes that McCravey had 19 years experience in similar work at EBSCO, National Computer Print, Mail Enterprises, High Cotton and other businesses.

When the Defendant produces a legitimate non-discriminatory reason for the alleged discrimination, the Plaintiff must prove that the legitimate reason offered was a mere pretext for an illegal motive.  McDonnell, 411 U.S. at 802.  The Plaintiff has not produced any evidence to demonstrate that Defendant's explanation for the pay disparity was a pretext for race-based discrimination and that the Defendant intentionally discriminated against Plaintiff.  Accordingly the Court finds that Plaintiff has neither established a prima facie case nor satisfied its burden in demonstrating race-based discrimination in compensation as it relates to Jim McCravey.

**4.     Sid Crocker**

Sid Crocker is also a distribution center clerk who was neither hired into nor ever assigned to the mail room.  As set forth in the analysis above, Crocker, a distribution center clerk, is not a proper comparator because his job is entirely different and more specialized than Plaintiff's job as a mail room clerk.   In addition, the Defendant has proffered a legitimate non-discriminatory reason[11] for the pay disparity that has not been shown by Plaintiff to be a pretext for race-based discrimination in compensation.  Accordingly, the Court finds that Plaintiff has not established a prima facie case for race-based discrimination as it relates to Sid Crocker.

**5.     Matthew Spraggins**

Matt Spraggins was a mail room clerk in the mail room and held the same position as Plaintiff.  The Plaintiff alleges that Defendant subjected him to intentional discrimination in compensation as it relates to Spraggins.  Although Spraggins is a proper comparator

---

[11] The Defendant has provided evidence that Crocker had a college degree which warranted a higher salary than that of Plaintiff.

because he performed the same duties as Plaintiff, Plaintiff must establish a prima facie case of intentional discrimination in compensation. Thus, Plaintiff must demonstrate that Spraggins (white) received higher compensation than Plaintiff. It is undisputed that Spraggins is a proper comparator. The Defendant has provided evidence that Spraggins was paid the same or less than Plaintiff during his entire employment at HealthSouth.[12] Therefore, the Plaintiff has not established a prima facie case for race-based discrimination as it relates to Matthew Spraggins.

Based on the foregoing reasons, the Court finds that Plaintiff has not established a prima facie case of race-based discrimination in compensation. Accordingly, the Court grants the Defendant's motion for summary judgment on the Plaintiff's disparate pay race discrimination claim.

## B. Pattern and Practice of Race Discrimination

The Plaintiff asserts that the Defendant has a pattern and practice of race discrimination. To establish a pattern or practice of disparate treatment for purposes of a discrimination claim under Title VII, the employee must show by a preponderance of the evidence that intentional discrimination was the employer's standard operating procedure. See Brazemore v. Friday, 478 U.S. 385, 398 (1986). Hence, the Plaintiff must show that intentional discrimination was the Defendant's regular rather than the unusual practice. (Id.) The plaintiff can prove that discrimination was the standard operating procedure "through

---

[12] Spraggins was hired as a mail room clerk at the rate of $7.25 per hour in approximately June 2000. (McKee Declaration at ¶ 15.) His pay rate remained at $7.25 per hour throughout his employment at HealthSouth. (Id.) In June of 2000, Vasser's pay rate as a mail room clerk was $7.25 per hour. (Id.) In October, 2000, Vasser's pay rate was increased to $7.53, twenty-eight cents higher than Spraggins' pay rate. (Id.)

a combination of statistics and anecdotes." <u>Joe's Stone Crab</u>, 220 F.3d at 1274.

Although the Plaintiff alleged in his complaint a pattern and practice of race discrimination, the Plaintiff has not produced any evidence to establish such claim of discrimination. A party responding to summary judgment may not rest on [his] pleadings to demonstrate the presence of an issue of fact. <u>Miranda</u>, 975 F.2d at 1533. Accordingly, the Court finds that the Plaintiff has not established that intentional discrimination was the Defendant's standard operating procedure. Therefore, the Plaintiff's claim fails as a matter of law.

### C. <u>Retaliation and Discrimination in Promotions Claims</u>

The Plaintiff alleges in his complaint that he was denied promotions and such positions were usually given to less senior and less qualified white employees constituting disparate treatment in promotions. Plaintiff also alleges that he attempted to use the Defendant's internal complaint procedures to express his concerns regarding discrimination and retaliation; however, no corrective action was taken by the Defendant and he was further subjected to retaliation. The Defendant alleges that Plaintiff has failed to rebut Defendant's summary judgment submission regarding his retaliation and promotions claims and has now waived these claims. The Defendant requests that the Court grant summary judgment as a matter of law as to Plaintiff's retaliation and promotion claims because Plaintiff offers no argument, much less evidence, in support of such claims. The record establishes that Plaintiff has failed to rebut Defendant's summary judgment submission regarding his retaliation and promotions claims. Accordingly, the Court finds that Plaintiff has not satisfied his burden, pursuant to Federal Rule of Civil Procedure 56, to overcome

Defendant's motion for summary judgment as to Plaintiff's retaliation and promotion claims.[13]

### D.  Hostile Work Environment

The Plaintiff alleges that the Defendant subjected him to a racially hostile work environment.  The Defendant asserts that the Plaintiff doesn't have any evidence to support a racially hostile work environment claim.  A plaintiff alleging a Title VII racially hostile work environment claim must establish the following elements: (1) the employee must belong to a protected group; (2) the employee must have been subjected to racial harassment; (3) the harassment must have been based on the race of the employee; (4) the harassment must have been sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) there must be a basis for holding the employer liable for the harassment, either directly or indirectly. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269 (11th Cir. 2002); Mendoza v. Borden, Inc., 195 F.3d 1238 (11th Cir. 1999)(applying these factors in the context of a hostile environment sexual harassment claim).

The Plaintiff belongs to a protected class; he is African-American.  The Plaintiff has provided in deposition testimony that he was subjected to a racially hostile work environment because he was paid  less than comparable white employees and because his supervisor, McKee, was not as friendly to African American employees as he was to white employees.

---

[13] Federal Rule of Civil Procedure 56 provides, in relevant part that:  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth the specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed.R.Civ.P. 56(e); See also Malone v. K-Mart Corp., 51 F.Supp. 2d 1287 (M.D. Ala. 1999).

(Vasser Dep., at 149.)   Although the Plaintiff has provided evidence through deposition testimony that his supervisor generally was neither nice nor polite, the Plaintiff acknowledges that neither the Defendant nor any employee ever subjected him to any racially offensive words, derogatory comments, racial jokes, racial cartoons, writing or drawings.  (Vasser Dep., at 144-145.) Plaintiff further alleges in his brief in response to Defendant's motion for summary judgment that: (1)  he saw black employees given more tasks than white employees; (2) he heard that McKee told Thomas that things were going to get tough; and (3) he was subjected to an environment where black employees were monitored with cameras after they complained of racial harassment and discrimination.   The allegations raised in the Plaintiff's response to the Defendant's brief for summary judgment are inconsistent with Plaintiff's deposition testimony.  Further, Plaintiff does not provide evidence to support his claim that he had personal knowledge of the alleged events and that the events affected his work environment.   Even assuming, however, that the Court takes all of Plaintiff's allegations into consideration and determines that he was subjected to harassment based on his race, Plaintiff has failed to establish that he suffered a racially hostile work environment sufficiently severe or pervasive to alter the terms or conditions of his employment.

———

To be actionable under Title VII, the requirement that harassment must be sufficiently severe or pervasive to alter the terms or conditions of employment contains both an objective and a subjective component.  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).  Hence, the behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive. (Id.)  In evaluating the objective severity of the harassment, the Eleventh Circuit has

considered, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.  Miller, 277 F.3d at 1276 (citing Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997).  Upon review of the record, the Plaintiff does not assert any allegations of frequent or severe discriminatory conduct, physically threatening or humiliating conduct, or any discriminatory conduct that unreasonably interfered with Plaintiff's job performance.   Accordingly, the Court finds that the Plaintiff has presented insufficient evidence to establish a racially hostile environment claim.  Therefore, the Defendant's motion for summary judgment is granted.

## V. Conclusion

For the reasons set forth above, the Court grants the Defendant's motion for summary judgment as to Plaintiff's discrimination and retaliation claims.

**DONE** and **ORDERED** this 25th day of March, 2005.

_____

**VIRGINIA EMERSON HOPKINS**
**United States District Judge**